COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-021-CR

 

 

KATHERINE WISEMAN                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Katherine Wiseman appeals the
trial court=s denial of
her motion to suppress, after which she pled nolo contendere to driving while
intoxicated (ADWI@) pursuant to a plea bargain, for which she received twenty months= community supervision and a $500 fine.  Appellant contends that the trial court erred
when it denied her motion to suppress, based on her Fourth Amendment right to
be free from unreasonable seizure.  We
affirm.

BACKGROUND

Just after midnight on April
11, 2005, a Carrollton police officer, Brian Box, noticed Appellant=s Ford Explorer (ASUV@) as he
drove past an apartment complex during his patrol.  The SUV had its hazard lights turned on and
was parked against the curb in the main driveway of the apartment complex=s parking lot, in which multiple vehicles were parked.[2]  Officer Box acknowledged that the complex was
not in a high crime or high drug-traffic area. 
Appellant and two passengers were in the SUV.

As he drove by, Officer Box
looked into the parking lot and saw someone=s legs partially protruding from the SUV=s open right rear passenger door.[3]  Officer Box decided to turn around, to Asee if they were stranded and needed any assistance.@  He indicated that he A[c]ouldn=t tell
exactly what they were doing, but the legs were out of the vehicle facing sideways.@








When Officer Box completed a
U-turn about a block south, entered the apartment complex, and turned on the
lights on his patrol car[4]
so that approaching traffic could see his vehicle, the rear passenger was back
in the SUV.  Officer Box testified that
at the point he pulled up behind the SUV, he Adid not know anything about the vehicle other than the fact that it
had its hazard lights on.@  After Officer Box pulled up behind it, the
SUV moved twenty to thirty feet forward and turned left into a parking
space.  Officer Box testified that he
continued pulling forward, into a position where he could make contact with
Appellant, the driver.








Officer Box called in the SUV=s license plate to dispatch;[5]
he testified that at this point, he was concerned about whether the SUV was
operational and able to move.  As he
approached the SUV,[6]
he saw a puddle of vomit close to the rear passenger=s location.[7]  He also noticed some vomit protruding from
the rear passenger=s window
back to the rear tire, and down over the SUV=s passenger side running board. 
However, he did not see anyone throw up, nor did he see any signs of
distress to indicate anything worse than an upset stomach.  After seeing the vomit, he expanded his
purpose to include checking to see if anyone in the SUV needed medical
attention.

Appellant was the first
person Officer Box approached, and upon contact with her, he saw signs of
intoxication and proceeded with a DWI investigation. This led to her arrest for
DWI.  At the trial court=s suppression hearing on November 2, 2005, Appellant argued that
Officer Box violated her Fourth Amendment rights by stopping and detaining her
without a warrant,[8]
reasonable suspicion for a stop, or satisfying the community caretaking
exception, which resulted in her subsequent arrest for DWI.  Officer Box was the sole witness to testify
at Appellant=s
suppression hearing.

The trial court limited the
suppression hearing to a discussion of the community caretaking exception,
stating, AThis is not
a reasonable suspicion, criminal activity abound or that type of stop.@  The trial court denied the
motion to suppress, but upon Appellant=s conviction, certified her right of appeal.

 








DISCUSSION

The Fourth Amendment protects
against unreasonable searches and seizures. 
U.S. Const. amend.
IV.  To suppress evidence because of an
alleged Fourth Amendment violation, the defendant bears the initial burden of
producing evidence that rebuts the presumption of proper police conduct.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id. Once the defendant
has made this showing, the burden of proof shifts to the State, which is then
required to establish that the search or seizure was conducted pursuant to a
warrant or was reasonable.  Id.  It is undisputed that the interaction between
Appellant and Officer Box was made without a warrant. 

Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997); State v. Ballman, 157 S.W.3d 65, 68 (Tex.
App.CFort Worth 2004, pet. ref=d).  In reviewing the trial
court=s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861‑62.  However, when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Johnson, 68 S.W.3d at 652‑53.








When the trial court does not
make explicit findings of historical facts, as in the instant case, we review
the evidence in the light most favorable to the trial court=s ruling and assume the trial court made implicit findings of fact
supporting its ruling, so long as those findings are supported in the record.[9]  Carmouche, 10 S.W.3d at 327‑28.  In determining whether a trial court=s decision is supported by the record, we generally consider only
evidence adduced at the suppression hearing because the ruling was based on it
rather than evidence introduced later.  Rachal
v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519
U.S. 1043 (1996).

The trial court limited the
suppression hearing to the community caretaking exception, implicitly finding
that this was a Astop,@ rather than an Aencounter,@ for Fourth Amendment purposes. 
There appeared to be no dispute at the suppression hearing with regard
to the pertinent facts.  The trial court
denied Appellant=s motion to
suppress, indicating that because Appellant had turned on the SUV=s hazard lights in the apartment complex driveway, at midnight, the
officer would have been remiss if he had failed to stop and see whether
something was wrong; therefore, under the community caretaking exception, the
officer acted reasonably in making an investigative stop.








Because the trial court found
Officer Box=s testimony
sufficient to establish that the community caretaking exception applied, its
ruling was an application of law to fact that did not turn on the witness=s credibility and demeanor.  See Guzman, 955 S.W.2d at 89; State v.
Bryant, 161 S.W.3d 758, 761 (Tex. App.CFort Worth 2005, no pet.). 
Therefore, we review de novo the trial court=s order denying the motion to suppress, to determine whether, on these
facts, the initial contact between Appellant and Officer Box was an Aencounter,@ which would
not implicate the Fourth Amendment, and if not, whether the community
caretaking exception was properly applied under these circumstances.

Investigative
Detention

 

Appellant argues that her
initial contact with Officer Box was a Fourth Amendment Astop,@ and that
without a valid warrant or warrant exception, her motion to suppress should
have been granted.  The State counters
that Appellant=s motion to
suppress was properly denied, characterizing Officer Box=s initial interaction with Appellant as an Aencounter,@ which, as a
matter of law, would fail to implicate the Fourth Amendment=s protections.













The Texas Court of Criminal
Appeals has recognized three categories of interactions between police officers
and citizens: encounters, investigative detentions, and arrests.  State v. Perez, 85 S.W.3d 817, 819
(Tex. Crim. App. 2002).  Unlike
investigative detentions and arrests, which are seizures for Fourth Amendment
purposes, an encounter is a consensual interaction, which the citizen is free
to terminate at any time.  Bryant,
161 S.W.3d at 761; See Gurrola v. State, 877 S.W.2d 300, 302-03 (Tex.
Crim. App. 1994).  The dispositive
question is whether the totality of the circumstances shows that the police
conduct at issue would have caused a reasonable person to believe that she was
free to decline the officer=s requests or otherwise terminate the encounter.  Florida v. Bostick, 501 U.S. 429,
439-40, 111 S. Ct. 2382, 2389 (1991); State v. Velasquez, 994 S.W.2d
676, 679 (Tex. Crim. App. 1999); Johnson v. State, 912 S.W.2d 227, 235
(Tex. Crim. App. 1995); see also California v. Hodari D., 499 U.S. 621,
627‑28, 111 S. Ct. 1547, 1551-52 (1991); Terry v. Ohio, 392 U.S.
1, 19 n.16, 88 S. Ct. 1868, 1879 (1968). 
If so, or when the individual=s freedom of movement is restricted by a factor independent of police
conduct, the interaction is a police‑citizen Aencounter.@  United States v. Drayton, 536 U.S.
194, 201, 122 S. Ct. 2105, 2110 (2002); Bostick, 501 U.S. at 436, 111 S.
Ct. at 2387; Florida v. Royer, 460 U.S. 491, 497‑98, 103 S. Ct.
1319, 1324 (1983); see also Velasquez, 994 S.W.2d at 679.[10]  A seizure occurs when a reasonable person
would believe he or she was not free to leave and has yielded to a show of
authority or has been physically forced to yield.  Hodari D., 499 U.S. at 627‑28,
111 S. Ct. at 1551-52; Johnson, 912 S.W.2d at 236. 

An officer=s stop of an automobile constitutes a seizure within the meaning of
the Fourth Amendment.  Corbin v. State,
85 S.W.3d 272, 276 (Tex. Crim. App. 2002); see also Delaware v. Prouse,
440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979); Garza v. State, 771
S.W.2d 549, 558 (Tex. Crim. App. 1989). 
In Corbin, the court of criminal appeals held that a seizure
occurred when the driver pulled over in response to the officer=s activation of his overhead lights. 
85 S.W.3d at 276-76.  The officer
then approached the car and asked the driver to step out.  Id. at 275.








The fact that a car is
already stationary when an officer pulls up behind it is not dispositive as to
whether a seizure has occurred.  See
Garza, 771 S.W.2d at 556.  But see
Stewart v. State, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980) (stating that
van was not stopped by officers because it was already stationary when they
approached).[11]  When a person voluntarily approaches a police
officer, this is an encounter.  See
Stewart, 603 S.W.2d at 862 (stating initial contact was an encounter when
driver got out of the van without being requested to do so).

Here, Appellant=s SUV was stationary, but then she pulled it into a parking space in
response to Officer Box=s pulling
his patrol car with its lights on up behind her.  This is unlike cases in which a vehicle is
stationary when the police arrive, and stays stationary after a police car
pulls in behind it.  See Garza,
771 S.W.2d at 556.  Once Appellant pulled
into the parking space and Officer Box positioned his patrol car with its
lights on to make contact with her, she no longer had freedom to depart;
therefore, she was effectively detained.  See Bostick, 501 U.S. at 436-37, 111 S.
Ct. at 2387.








Community
Caretaking Exception 

 

Whether a search or seizure
is reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004).  Reasonableness
is measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id. 
When police-citizen contact rises to the level of a seizure, it must be
supported by reasonable suspicion, probable cause, or the community caretaking
exception.  Corbin, 85 S.W.3d at
276. 

Appellant argues that her
motion to suppress should have been granted because these circumstances fail to
satisfy the community caretaking exception=s requirements.  The State
argues the contrary.

The community caretaking
exception allows police officers, as part of their duty to Aserve and protect,@ to stop or temporarily detain an individual whom a reasonable person
would believe is in need of help, given the totality of the circumstances.  Wright v. State, 7 S.W.3d 148, 151
(Tex. Crim. App. 1999); see Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.
Ct. 2523, 2528 (1973).  This exception is
to be narrowly applied.  Wright, 7
S.W.3d at 152.








To invoke the community
caretaking exception, an officer=s primary motive must be concern for the individual=s well‑being.  Corbin,
85 S.W.3d at 277. Here, the record reflects that Officer Box was not sure if
anyone in the SUV needed help, but he was concerned that they might have been
stranded because they had activated the SUV=s hazard lights.  We conclude
that the trial court, as the exclusive judge of credibility and finder of fact,
could have found that Officer Box was primarily motivated by community
caretaking concerns when he made the decision to turn around and check on the
SUV and its occupants.  See id.  (citing Ross, 32 S.W.3d at 855).

Next, we must determine
whether Officer Box acted reasonably in stopping Appellant to render
assistance.  To do this, we consider the
following nonexclusive factors, in light of the facts available to the officer
when he stopped Appellant: (1) the nature and level of the distress exhibited
by the individual; (2) the location of the individual; (3) whether or not the
individual was alone, had access to assistance independent of that offered by
the officer, or both; and (4) to what extent the individualCif not assistedCpresented a
danger to himself or others.  Wright,
7 S.W.3d at 151‑52; see Terry, 392 U.S. at 21‑22, 88 S. Ct.
at 1880; Wright v. State, 18 S.W.3d 245, 247 (Tex. App.CAustin 2000, pet. ref=d).








ABecause the
purpose of the community caretaking exception is to allow an officer to >seize= and assist
an individual whom he reasonably believes is in need of help, the first factor
is entitled to the greatest weight.@  Corbin, 85 S.W.3d at
277.  The greater the nature and level of
distress exhibited, the more likely the police involvement will be a reasonable
exercise of the community caretaking exception. 
Id.  The remaining three
factors give definition to the first factor, and a particular level of
exhibited distress may be seen as more or less serious depending on their
presence or absence.  Id.

Appellant argues that on
these facts, the nature and level of distress exhibited to Officer Box when he
made his decision to turn around and enter the complex was insufficient to
justify applying the community caretaking exception.  The State asserts that Officer Box acted
reasonably on his assumption that the SUV=s occupants needed his assistance.








In Wright, a police
officer on the highway at 4 a.m. saw the rear 
passenger of a moving car lean out an open window and vomit, so he
stopped the car to make sure the passenger was all right.  7 S.W.3d at 149-50.  The Texas Court of Criminal Appeals recognized
the community caretaking exception in this case and developed the list of
factors.  Id. at 152.  The appellate court subsequently applied the
factors and concluded that the exception did not apply in that case, primarily
because nothing indicated that the passenger=s condition was Aany more
serious than an upset stomach.@  Wright, 18 S.W.3d at
247; accord Andrews v. State, 79 S.W.3d 649, 652 (Tex. App.CWaco 2002, pet. ref=d).

In Corbin, a police
officer on the interstate at 1 a.m. saw a car briefly drift

across the side stripe along the shoulder of the
road while traveling below the speed limit, and followed it for a little over a
mile without seeing any violations, before turning on his overhead lights.  85 S.W.3d at 274-75.  The driver pulled over, and the officer asked
him to step out of the car and patted him down.  Id. at 275.  The court stated that the officer=s belief that the driver might be tired and in need of assistance was
not reasonable under these circumstances because the nature and level of the distress
exhibited was extremely low when the driver merely strayed momentarily over the
road=s side stripe, then drove normally.  Id. at 278; see also Eichler v. State,
117 S.W.3d 897, 902 (Tex. App.CHouston [14th Dist.] 2003, no pet.) (holding that driver=s single swerve over interstate=s white hash-marked line in light traffic after midnight did not
justify applying community caretaking exception).








In contrast, the community
caretaking exception has been held to apply in situations in which an officer
sees distress characterized by a motorist driving in an unusual manner.  See, e.g., Lebron v. State, 35 S.W.3d
774, 777 (Tex. App.CTexarkana
2001, pet. ref=d) (applying
exception when officer found motorist slowly driving away from reported
accident on two flat tires before coming to a full stop on the roadway).  It has also applied to situations in which
police find a driver parked on the side of the road.  McDonald v. State, 759 S.W.2d 784, 785
(Tex. App.CFort Worth
1988, no writ.) (adopting exception when driver sat in parked car on highway=s shoulder, slumped over steering wheel).

Officer Box=s decision to stop and check on the SUV arose from a concern that the
SUV was stranded because it had its hazard lights on, as well as concern for
the passenger whom he saw partially inside and outside of the SUV.  Therefore, the evaluation of distress here
turns on how hazard lights are interpreted, in addition to any concern for
passenger well-being.  Cf. Wright,
18 S.W.3d at 247.








Hazard lights are used to
alert other motorists to the presence of a stopped car.  See, e.g., Allen v. Knippa, 552 S.W.2d
528, 533-34 (Tex. Civ. App.CCorpus Christi 1977, writ dism=d) (discussing duty to warn approaching motorists of stopped vehicle=s presence on roadway).  They
can be used for identification purposes.  See, e.g., Brother v. State, 166
S.W.3d 255, 257 (Tex. Crim. App. 2005) (noting that 911 operator instructed
witness of drunk driving to turn on hazard lights to identify his vehicle to
officers), cert. denied, 126 S. Ct. 1172 (2006).  They can also be used to indicate some form
of automobile-related distress.  See,
e.g., Lane v. State, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (describing
robbery case in which undercover officer had hazard lights flashing, car=s hood open, and was parked on roadside, posing as a stranded
motorist).[12]








Here, around midnight,
Officer Box saw the SUV=s hazard
lights and a rear passenger partially outside of the SUV.  On his approach, he saw vomit near the rear
passenger=s
location.  Officer Box=s initial view of the SUV=s activated hazard lights would tend to indicate to a reasonable
person that Appellant and the SUV=s passengers were facing some sort of automobile-related distress.  See Lane, 763 S.W.2d at 786.  When combined with the passenger=s initial position, half inside and half outside of the SUV with legs
protruding, and the late hour, Officer Box could have reasonably concluded that
this was a high level of distress and that the SUV=s occupants required his assistance. 
This conclusion was reinforced when he saw the passenger=s vomit as he approached the SUV. 
Cf. Wright, 18 S.W.3d at 247; Andrews v. State, 79 S.W.3d
at 652. Therefore, even though hazard lights can be used to indicate more than
just distress, see Brother, 166 S.W.3d at 257, we conclude that the
nature and level of distress exhibited here, under these circumstances, was
high enough to necessitate investigation. 
The other factors, providing context for the first, tend to support the
reasonableness of Officer Box=s actions.  See Corbin,
85 S.W.3d at 277.

Regarding the second factor,
location, Appellant=s SUV was
initially parked along the curb of the apartment complex=s driveway.  Stopping in the
driveway instead of pulling into a designated parking space could tend to
indicate some sort of distress.[13]
 See, e.g., Chilman v. State, 22
S.W.3d 50, 55 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d) (holding that exception was satisfied when driver was parked where
people normally do not park; driver








also appeared confused by campus barrier, at 2
a.m., in a relatively isolated area, and would present a danger to others if he
removed or disturbed the barrier).

The third factor, access to
other assistance, also tends to favor the reasonableness of Officer Box=s actions.  While the complex
parking lot had multiple vehicles parked in it, and the SUV itself contained
three people, because of the lateness of the hour, Officer Box could have
reasonably concluded that Appellant required his assistance.[14]

Finally, regarding the extent
to which an individual without assistance would present a danger to herself or
others, the risk of danger correlates to the nature and level of distress
reasonably perceived.  Here, the
high level of distress indicated by the SUV=s hazard lights and the passenger=s position leads us to conclude that there was a proportionately high
level of risk.








In the community caretaking
distress spectrum, the most severe distress tends to involve solo drivers in
some sort of trouble, see McDonald, 759 S.W.2d at 785, and the least
severe tends to involve no apparent distress besides a momentary drift across
the road=s side stripe, see Corbin, 85 S.W.3d at 278.  The facts here fall closest to the severe end
of the spectrum, because although Appellant was not alone in the SUV, it was
not unreasonable for Officer Box to presume distress after viewing an SUV with
its hazard lights on and a passenger partially outside the vehicle, in an
apartment complex driveway after midnight. 
We overrule Appellant=s sole point.

 

 

CONCLUSION

Because we hold that
Appellant=s motion to
suppress was properly denied, we affirm.

 

 

DIXON
W. HOLMAN

JUSTICE            

 

PANEL F: 
CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
November 16, 2006











[1]See Tex.
R. App. P. 47.4.





[2]Officer Box testified that he did
not recall whether the curb where he first noticed the SUV was marked as a fire
lane.





[3]The record does not reflect the
exact positioning of Officer Box in relation to the SUV and the passenger door
at the time that he saw the SUV.  





[4]Officer Box=s testimony reflects that he could
not recall whether he turned on his vehicle=s full lights or just the rear deck lights.





[5]Officer Box=s testimony indicates that the call
to dispatch did not result, to his knowledge, in any hits or warrants out on
the SUV.





[6]The record does not reflect whether
Officer Box was still in his vehicle or on foot when he noticed the puddle of
vomit, merely that he saw it as he Aapproached the vehicle and made contact with the driver.@





[7]Officer Box testified that the
puddle was Ain the vicinity of where the
individual from the rear of the vehicle was placed.@





[8]The State stipulated at the
suppression hearing that this was a warrantless-arrest issue.





[9]The trial court did not file
written findings of fact and conclusions of law. 





[10]Although unpublished opinions have
no precedential value under rule 47.7, we note that this court has examined the
distinction between Aencounters@ and other police‑citizen
interactions in several recent opinions on similar facts.  See Tex.
R. App. P. 47.7; State v. Carter, No. 02‑04‑00063‑CR,
2005 WL 2699219, at *1 (Tex. App.CFort Worth Oct. 20, 2005, pet. ref=d) (mem. op.) (not designated for
publication) (holding that investigative detention occurred when officer
activated his vehicle=s strobe lights); Statzel v.
State, No. 02‑04‑00402‑CR, 2005 WL 1542673, at *1 (Tex. App.CFort Worth June 30, 2005, no pet.)
(mem. op.) (not designated for publication) (holding that merely an encounter
occurred because activation of officer=s emergency lights after driver had already pulled off the
road was equally consistent with safety purposes); Cervas v. State, No.
02‑04‑00463‑CR, 2005 WL 794384, *1 (Tex. App.CFort Worth Apr. 7, 2005, no pet.)
(mem. op.) (not designated for publication) (holding encounter occurred when
driver, whose car was already partially in a ditch with a flat tire,
voluntarily rolled down his car window to speak to approaching officer).





[11]A detention may occur when a person
in a parked car complies with a police order to roll down the window or open
the door.  Ebarb v. State, 598
S.W.2d 842, 850 (Tex. Crim. App. 1979) (noting that a Astop@ has no more to do with a person=s prior motionlessness than a Afrisk@ has to do with his prior
friskiness).  However, the physical
location of the parked car may also have an impact on whether the police order
alone constitutes a stop instead of an encounter.  See Merideth v. State, 603 S.W.2d 872, 873
(Tex. Crim. App. 1980) (holding that officer=s knocking on driver=s window was not a stop, but became one only after driver
opened the door and officer detected odor of marijuana); Bryant, 161
S.W.3d at 762 (stating interaction between officer and driver did not become a
stop until after driver opened his car door); Ashton v. State, 931
S.W.2d 5, 7 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d) (stating that the interaction
was an encounter when officer requested that driver roll down her window).  In Ebarb, the car was parked in a
private driveway.  598 S.W.2d at 843‑44.  In Ashton, in contrast, the driver was
parked along the side of a street.  931
S.W.2d at 6.  In Bryant, the
driver had pulled into the parking lot of a strip shopping center and then onto
a drive that separated two sets of buildings in the shopping center, turned
around, stopped between the buildings, and turned his headlights off before the
officer approached and knocked on the car window.  161 S.W.3d at 760.  In Merideth, the investigation took
place in an apartment complex parking lot after the officer received a call to
investigate several people around parked cars in the apartment complex parking
lot, at 3:00 a.m., and the police had been receiving burglary calls with
regularity in that area.  603 S.W.2d at
873.





[12]Lane, in its many incarnations,
addressed a number of issues involved in a robbery conviction.  See, e.g., 828 S.W.2d 764, 765 (Tex.
Crim. App. 1992).  We cite it here merely
for the example of how the hazard lights were used.





[13]The community caretaking exception
has applied when a vehicle is found parked by the side of a road.  See McDonald, 759 S.W.2d at 785.  It has applied when a vehicle was parked in a
deserted, high crime, or high drug‑traffic area, or the parking lot of a
business closed for the night.  See
Morfin v. State, 34 S.W.3d 664, 667 (Tex. App.CSan Antonio 2000, no pet.) (holding
exception applied when car was parked in dark, high‑crime area); Cunningham
v. State, 966 S.W.2d 811, 813 (Tex. App.CBeaumont 1998, no pet.) (holding that exception applied when
driver had flat tire, late at night, in unsafe neighborhood, driving at unsafe
speed).





[14]Officer Box testified that when he
first observed the SUV, he did not know whether anyone in it knew someone who
lived in the complex.