Gerald ANDREWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–061–CR.

Court of Appeals of Texas,
Waco.

May 29, 2002.

Rehearing Overruled June 19, 2002.

Kerri K. Anderson–Donica, Law office of Kerri K. Anderson–Donica, Corsicana, for appellant.

Patrick C. Bathchelor, Navarro County Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice Gray.

## OPINION

REX D. DAVIS, Chief Justice.

Gerald Andrews pleaded *nolo contendere* to misdemeanor driving while intoxicated (second offense) after the court denied his motion to suppress evidence. Pursuant to the State's plea recommendation, the court sentenced him to one year's confinement and a $750 fine, suspended imposition of sentence, and placed him on community supervision for two years. Andrews appeals the denial of his suppression motion.

The facts are not disputed.[1] Department of Public Safety trooper John Cabano saw Andrews pull to the paved shoulder of Interstate 45 at about one o'clock in the morning. Cabano pulled up behind Andrews "to see if they might need assistance." He saw Andrews's wife leaning out through the open passenger door. It appeared to him that she was vomiting. She shut her door and Andrews began to pull away. Cabano turned on his overhead lights and stopped them "to make sure everything was okay." As he testified, he was concerned about a "possible illness. I have come into situations where heart attacks, spousal abuse, *et cetera,* out on the interstate." He did not suspect "criminal activity" when he stopped them. Cabano testified that the nearest hospital was "less than five miles away."

The State also offered an in-car video of the stop. From the video, it is difficult to discern exactly what Andrews's wife was doing as she leaned out of the car. The video then depicts the Andrewses' car pulling away. Cabano activated his overhead lights, and Andrews stopped.

Cabano approached and asked if everything was okay. Andrews responded in the affirmative. Cabano smelled the odor of an alcoholic beverage and asked Andrews to step to the rear of the car. Andrews did not satisfactorily perform several field sobriety tests, and Cabano arrested him for driving while intoxicated.

Andrews contends in his sole point of error that his warrantless stop is not justified by the community caretaking function recognized by the Court of Criminal Appeals in *Wright v. State,* 7 S.W.3d 148, 151 (Tex.Crim.App.1999) (citing *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37

---

1. Accordingly, we conduct a *de novo* review to resolve the legal issues presented. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); *Vicioso v. State,* 54 S.W.3d 104, 109 (Tex.App.-Waco 2001, pet. ref'd).

L.Ed.2d 706 (1973)). The State counters that the facts do fit within this narrow exception. The State argues alternatively that trooper Cabano had reasonable suspicion of criminal activity sufficient to justify a temporary detention.

 The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. This prohibition extends to "brief investigatory stops such as the stop of [a] vehicle." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628 (1981). "In general, law enforcement personnel may not search or seize an individual absent a warrant based on probable cause." *Wright,* 7 S.W.3d at 150. As previously stated, two exceptions to this general rule are pertinent to this appeal: (1) the community caretaking exception recognized by the Court of Criminal Appeals in *Wright;* and (2) the concept of reasonable suspicion first recognized in *Terry v. Ohio.* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).

## COMMUNITY CARETAKING EXCEPTION

 The Court of Criminal Appeals has determined that a search or seizure is not "unreasonable" when it is done pursuant to a valid exercise of the community caretaking function. *See Wright,* 7 S.W.3d at 151. The Court observed that this is an exception of "narrow applicability." *Id.* at 152.

 The Court provided a list of four non-exclusive factors to be considered when deciding whether a search or seizure is justified by this narrow exception:

(1) the nature and level of the distress exhibited by the individual;

(2) the location of the individual;

(3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4) to what extent the individual—if not assisted—presented a danger to himself or others.

*Id.* Our application of these factors to Andrews's case leads us to conclude that the community caretaking exception does not apply.

The facts of this case are remarkably similar to those presented in *Wright. See Wright v. State,* 18 S.W.3d 245, 246 (Tex. App.-Austin 2000, pet. ref'd) (on remand from the Court of Criminal Appeals). Regarding the first factor (nature and level of distress), the court observed, "[The passenger] appeared to be having some gastric distress. . . . Nothing indicated that the passenger's condition was any more serious than an upset stomach." *Id.*

The Texarkana Court of Appeals reviewed a case involving an individual stopped in a location somewhat similar to that where Cabano stopped Andrews. *See Corbin v. State,* 33 S.W.3d 90, 94 (Tex. App.-Texarkana 2000, pet. granted) ("The location of the individual was on a somewhat isolated stretch of interstate highway.").[2] Although the court ultimately concluded that the stop at issue was justified by the community caretaking exception, the court characterized the strength of this factor as "fairly low." *Id.* at 95; *cf. Morfin v. State,* 34 S.W.3d 664, 666 (Tex. App.-San Antonio 2000, no pet.) (car parked in "very high crime area"); *Chilman v. State,* 22 S.W.3d 50, 55 (Tex.App.-

---

2. The broad issue on which the Court of Criminal Appeals granted review is, "Did the court of appeals misapply *Wright v. State* and the community care-taking function to justify the traffic stop in this case?" *See Corbin v. State,* No. 01–0094 (Tex.Crim.App. May 30, 2001) (order granting discretionary review).

Houston [14th Dist.] 2000, pet. ref'd) (car parked in "a spot where people normally do not park").[3]

The intermediate court's analysis in *Wright* properly analyzes the last two factors insofar as they bear on Andrews's case.

> Appellant was ... in ... a car that was being driven in a lawful manner on a public highway. [The passenger] appeared to be having some gastric distress, but ... the driver ... could have aided and assisted [the passenger].... None of the car's occupants indicated that they were in need of additional help. Nothing indicated that the [trooper's] assistance was necessary or that his help would add to the comfort or welfare of [the passenger]. Nothing supported a *reasonable* belief that [the passenger] was a danger to [her]self or to others.

*Wright,* 18 S.W.3d at 247.

We agree with this analysis. Accordingly, we hold that the stop is not justified by the community caretaking exception.

## REASONABLE SUSPICION

█ The State argues in the alternative that the stop is justified because Trooper Cabano had reasonable suspicion under the totality of the circumstances to warrant a temporary detention. Under *Terry v. Ohio,* a law enforcement agent has what has come to be known as "reasonable suspicion" to temporarily detain a suspect when the agent is aware of "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at

906; *see also Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000).

According to the State:

> At one o'clock in the morning, Appellant was driving away from an establishment that served alcohol. The vehicle pulled to the side of the road for no apparent reason, and the passenger was purging a night's worth of alcohol onto the pavement. This would give rise to a reasonable and articulated suspicion that Appellant was engaged in criminal activity.

The State recites five facts which it contends support a finding of reasonable suspicion: (1) early morning hour; (2) departing from an establishment that served alcohol; (3) pulling to the side of the road for no apparent reason; (4) regurgitation; and (5) due to overconsumption of alcohol.

█ Assuming without deciding that these facts would support a finding of reasonable suspicion, the two of these facts which would be critical to such a finding (*i.e.,* that the Andrewses had just departed from an establishment that served alcohol and that Mrs. Andrews had consumed "too much" alcohol) were unknown to Trooper Cabano when he decided to stop their car. A *"Terry* stop" must rest on the facts known to the officer at the time of the stop-not on subsequently-acquired knowledge. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 ("would the facts available to the officer *at the moment of the seizure* or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?") (emphasis added); *accord Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

---

**3.** The stops in nearly all of these cases occurred in the early morning hours. *See Corbin v. State,* 33 S.W.3d 90, 92 (Tex.App.-Texarkana 2000, pet. granted) (1:00 a.m.). *Chilman v. State,* 22 S.W.3d 50, 55 (Tex.

App.-Houston [14th Dist.] 2000, pet. ref'd) (2:00 a.m.); *Wright v. State,* 18 S.W.3d 245, 246 (Tex.App.-Austin 2000, pet. ref'd) (4:00 a.m.).

Trooper Cabano testified that he did not suspect "criminal activity" when he stopped the Andrewses. The facts known to him at that time (*i.e.*, that Andrews pulled to the side of the road for no apparent reason in the early morning hours and his passenger regurgitated) do not give rise to a reasonable suspicion of any criminal activity. Accordingly, we reject the State's reasonable suspicion argument.

For the foregoing reasons, we sustain Andrews's sole point of error.

## CONCLUSION

We echo the concluding remarks of the Austin Court of Appeals in *Wright.*

Although Deputy Tomlinson articulated concerns about appellant's safety, the concerns expressed were unsupported by articulated, reasonable facts. The reasons for the stop given by the officer were unreasonably speculative.... The totality of the circumstances did not justify official intrusion upon appellant's constitutional right to be secure in his person. The stop and detention of appellant was simply an unreasonable exercise of authority by the officer in violation of appellant's constitutional rights.

*Wright,* 18 S.W.3d at 247.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Justice TOM GRAY dissenting.

TOM GRAY, Justice, dissenting.

Gerald Andrews was charged by information with driving while intoxicated. Andrews filed a motion to suppress evidence. After the trial court denied his motion to suppress evidence, Andrews entered a plea of no contest. The court found him guilty and assessed his punishment at one year in jail, probated for a period of two years with the condition he serve fifteen days, and pay a $750 fine. Andrews asserts that the trial court erred by denying his motion to suppress evidence because the officer did not have reasonable suspicion of criminal activity, nor was the "stop" authorized by the community caretaking function. I would hold the trial court did not err in denying the motion to suppress and affirm the judgment. Because the majority does not, I respectfully dissent.

## FACTUAL BACKGROUND

Around 1:00 a.m., Trooper Cabano witnessed Andrews pull off the interstate highway onto the shoulder, and stop his vehicle. Cabano turned his car around and pulled in behind Andrews to see if help was needed. After Cabano stopped behind the vehicle, he saw the passenger withdraw into the car and shut her door. Andrews released the brake and the car began to roll forward. Cabano activated his overhead lights. Andrews came to an immediate stop after moving slowly forward only a few yards. When Cabano approached Andrews his window was rolled down. Cabano asked "is everything all right?" Cabano smelled the odor of alcohol which appeared to be coming from within the vehicle. After administering routine field sobriety tests to Andrews, Cabano arrested Andrews for driving while intoxicated.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court's findings of fact are given "almost total deference," especially when based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). In the absence of explicit findings, the appellate court assumes the trial court made implicit find-

ings which are supported in the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). However, an abuse of discretion standard does not necessarily apply to "application of law to fact questions" if the resolution does not turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In such instances, appellate courts may apply a *de novo* review. *Id.* When the issue is whether under the totality of the circumstances an officer had reasonable suspicion to make a stop, the trial judge is not necessarily in a better position than a reviewing court to make that determination. *Id.* at 87. Because the legal rules for reasonable suspicion "acquire content only through application, [i]ndependent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Id.*

## COMMUNITY CARETAKING FUNCTION ·

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures absent a warrant based on probable cause. *Wright v. State*, 7 S.W.3d 148, 150 (Tex. Crim.App.1999); *Chilman v. Texas*, 22 S.W.3d 50, 54 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). However, there are several exceptions to the warrant requirement. One such exception arises when the detention is connected with an officer's exercise of the community caretaking function. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Wright*, 7 S.W.3d at 151–52; *Chilman*, 22 S.W.3d at 54.

In *Cady*, the Supreme Court recognized that police officers do more than just enforce the law, conduct investigations, and gather evidence to be used in criminal proceedings. An officer frequently investigates accidents where there is no claim of criminal liability, directs traffic, and performs other duties that can best be described as "community caretaking functions." *Cady*, 413 U.S. at 441, 93 S.Ct. 2523; *Wright*, 7 S.W.3d at 151. Under an officer's duty to "serve and protect," an officer may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help. *Id.*

The following non-exclusive list of factors is relevant in determining whether a police officer acted reasonably in stopping an individual to determine if assistance is needed:

(1) the nature and level of the distress exhibited by the individual;

(2) the location of the individual;

(3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4) to what extent the individual—if not assisted—presented a danger to himself or others.

*Wright v. State*, 7 S.W.3d 148, 152 (Tex. Crim.App.1999). These factors apply equally to the driver and the passenger of a vehicle. *Cady* drew no distinction in the applicability of the community caretaking function to stops to determine the welfare of passengers as opposed to drivers. *Id.*

## COMMUNITY CARETAKING FUNCTION ANALYSIS

To determine if a reasonable person could believe an individual "needs help," which would trigger the community caretaking function, the court conducts a fact intensive inquiry based on the circumstances of the particular case. *Chilman v. Texas*, 22 S.W.3d 50, 55 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

### The Nature and Level of Distress Exhibited by the Individual

Cabano stopped a motor vehicle at approximately 1:00 in the morning. The passenger was hanging out of the open door and appeared to be vomiting. There were no other signs of distress; no blood was seen, no shouts or calls for help were heard, and no violence was observed.

### The Location of the Individual

Cabano observed Andrews pull his vehicle out of the marked lanes and onto the northbound shoulder of the interstate highway and stop. According to Texas Transportation Code § 545.058(a)(1), a person may stop, stand, or park on an improved shoulder to the right of the main traveled portion of the roadway if necessary and if it may be done safely. TEX. TRANSP. CODE § 545.058(a)(1) (Vernon 1999 & Supp.2002). The shoulder of the interstate is there for a reason, to provide a place for motorist to safely stop when an essential need arises. A reasonable person, especially one who regularly patrols an interstate highway, could easily discern an individual might be in need of help if they had to pull onto the shoulder of the interstate and stop at 1:00 a.m.

As noted in *Cady*, police officers have contact with vehicles for reasons related to the operation of the vehicles themselves. States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Based on the extensive regulation of motor vehicles and traffic, and the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. *Id.*

The location factor also requires a consideration of the level of intrusion necessary for the officer to involve himself in the affairs of a private citizen without a specific request from the citizen. The greater the level of intrusion necessary for an officer to carry out the community caretaking function, the greater the justification or apparent need must be, to exercise that function. In other words, it takes more justification for an officer to exercise the community caretaking function if the officer must knock down a door to a home than if the officer must only temporarily detain an individual already stopped in a public place. In this particular instance, Andrews would be only briefly detained on the side of a public roadway in order for the officer to find out if the occupants of the vehicle needed help.

### Whether or Not the Individual was Alone and/or had Access to Assistance Independent of that Offered by the Officer

Once Cabano pulled behind Andrews, he observed the passenger leaning out the door and apparently vomiting. Although the passenger was not entirely alone, Andrews was the only other person in the immediate vicinity who could offer assistance and Cabano could not have known what assistance Andrews was capable of providing if it was needed by the passenger.

### To What Extent the Individual—If Not Assisted—Presented a Danger to Himself or Others

A car stopped on the shoulder of an interstate highway presents a danger to the occupants of the stopped car and other individuals on the highway. In the dark of night, cars can be and have been misled by the tail lights on vehicles pulled onto the

shoulder of the road. In these instances, accidents have occurred when a car is driven out of the marked lane, onto the shoulder of the road, and into the rear of the parked car. Additionally, unmarked obstructions on the shoulder of a highway can cause serious consequences if hit by a vehicle that is itself attempting to use the shoulder of the highway for an emergency stop. An officer can help to alleviate the risk of accidents, even if temporarily, by turning on flashing lights to warn other vehicles of the presence of the parked car. Further, a passenger who is violently ill and throwing up in the vehicle can be a distraction to the driver, which places the people in that vehicle and others using the road in danger. *But see, Wright v. Texas,* 18 S.W.3d 245, (Tex.App.-Austin 2000, pet. denied).

## CONCLUSION

An analysis of all the factors to be used in determining whether a reasonable person could believe an individual needed help is not just a number count of the facts listed under each factor, or even a tally of the factors for or against exercising the community caretaking function, but is a weighing and balancing of all the facts. The analysis must not be one of hindsight, but must be viewed from the officer's perspective of the totality of the circumstances at the time. A reasonable person, under the totality of the circumstances in this case, could believe Andrews or his passenger might need help, especially given that the location was on the shoulder of an interstate highway at 1:00 a.m.; the passenger was leaning out of the vehicle apparently vomiting; where they were relatively isolated during the early morning hours so there was no one else to assist them; and they presented a danger to themselves, and others driving on the interstate, by stopping on the shoulder of the highway.

Cabano was properly acting within the community caretaking function and did not need a warrant to temporarily detain Andrews. Therefore, based on the law as applied to the undisputed facts, the trial court did not err by failing to suppress the evidence of intoxication obtained by the officer while performing the community caretaking function.

Because I would overrule the sole issue presented by Andrews under the community caretaking function exception to the warrant requirement, I need not address the State's alternative argument that the officer had a reasonable basis to make an investigatory detention. However, I would note that the Supreme Court stated in *Wardlow* that "flight is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such," and "determinations of reasonable suspicion must be based on commonsense judgments and inferences about human behavior" founded on the totality of the circumstances. *Illinois v. Wardlow,* 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570. And the Court of Criminal Appeals held in *Pyles,* "that avoiding officers is a factor to consider when determining probable cause." *Pyles v. State,* 755 S.W.2d 98, 109 (Tex.Crim. App.1988).

The majority holds that Cabano had no reason to be in the position to come in contact with Andrews and that the trial court erred in failing to suppress the evidence of intoxication thus obtained. I respectfully dissent.