2009 Ark. App. 799

**Corey J. MOSLEY, Appellant,**

v.

**STATE of Arkansas, Appellees.**

**No. CA CR 08–1408.**

Court of Appeals of Arkansas.

Dec. 2, 2009.

Amy Freedman, Texarkana, for appellant.

Dustin McDaniel, Att'y Gen., by: Lauren Elizabeth Heil, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Corey J. Mosley was convicted on August 12, 2008, in Miller County Circuit Court of possession of cocaine and sentenced to sixty months' probation. On appeal, he contends that the trial court erred in denying his motion to suppress, arguing that the police officer who made the traffic stop of appellant's vehicle had no reasonable suspicion to do so. We affirm.

By criminal information filed October 10, 2007, in Miller County Circuit Court, appellant was charged with possession of cocaine. Appellant filed a motion to suppress the cocaine from being introduced at trial, arguing that it had been seized in violation of his constitutional right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution, article 2, section 15 of the Arkansas Constitution, and Arkansas Rules of Criminal Procedure 3.1 and 4.1 (2008).

At issue in the suppression hearing was the validity of the traffic stop. Officer Todd Harness of the Texarkana Police Department testified that he was patrolling at 2:00 a.m. on the morning of appellant's arrest. He turned behind appellant's vehicle on Eastside Drive. He noticed that appellant's car began to slow, and when it approached the intersection of Preston and Baltimore Street, the car began to slow and then speed up and then slow down. Ultimately, the car merged to the right-hand side of the road after it passed the intersection. Officer Harness testified that this raised his suspicions because he was not sure what the driver's intentions were. He thought the car was going to turn, but instead, it sped up again and then it again merged onto the side of the roadway. The second time it began to slow and merge to the right side of the roadway caught Officer Harness's attention. He stated that the car again sped up and got back into the travel portion of the roadway, put its right blinker on, and turned onto Park Street, which is not a through street. He stated that the erratic driving led him to believe that the driver was unsure of exactly where he wanted to go. Also, he stated that oftentimes people that are driving under the influence of alcohol or drugs tend to exhibit those

types of driving skills in the midst of negotiating a roadway or an intersection, and oftentimes the alcohol or drug impairs their ability to drive safely. Because of his suspicion, Officer Harness stopped appellant.

Officer Harness testified that appellant provided him with a wrong name. Appellant told Officer Harness that his name was Marshall, but spelled it M-a-r-s-h-l-l. Appellant did not have any identification with him, and was unable to recall his social security number. Officer Harness also noted that appellant provided him with a date of birth that was inconsistent with the date of birth that was in the in-house computer, which further heightened his suspicions. Appellant was extremely nervous and visibly shaking. All this led Officer Harness to believe that appellant was lying about his identity. Officer Harness explained that the tattoo on appellant's shoulder, which read "Mosley," coupled with the other information, led to appellant's arrest for obstructing governmental operations and failure to identify and provide his identity to Officer Harness as an officer.

Appellant was placed in the back of Officer Harness's unit on the left side. Once they arrived at the basement of the police department, appellant's body was positioned awkwardly such that the right side of his torso was on the right side of the car, which is the opposite side from which he had been placed. After appellant was taken out of the car, Officer Harness checked the backseat for contraband, as is the policy of his police department. On the right side of the vehicle, Officer Harness found a plastic bag that contained crack cocaine.

Appellant argued at the suppression hearing that Officer Harness did not have a reasonable suspicion to make the traffic stop. The trial court denied the motion to suppress, stating that the erratic driving, the time of day, 2:00 a.m., the streets and high-crime area involved, appellant's turning down a street with no exit, and appellant's attempts to hide his identity gave the officer articulable facts upon which to make a probable-cause determination. After appellant was convicted, he filed a timely notice of appeal, and this appeal followed.

In reviewing the denial of a motion to suppress evidence, our appellate courts conduct a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

A law-enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. *See* Ark. R.Crim. P. 3.1 (2008). The justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). "Reasonable suspi-

cion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion. *See* Ark. R.Crim. P. 2.1 (2008).

In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004); *Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001); *Travis v. State,* 331 Ark. 7, 959 S.W.2d 32 (1998). Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005). In assessing the existence of probable cause, our review is liberal rather than strict. *Laime, supra.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed occurred. *Id.*

Appellant contends that Officer Harness did not have reasonable suspicion to justify stopping the vehicle and that it was therefore error to deny his motion to suppress. Appellant cites *Stokes, supra,* where our supreme court held that there was no probable cause to believe that the defendant was committing a traffic violation. The police officer in *Stokes* observed the defendant driving under the speed limit on the interstate, make a hasty exit, and eventually back down a city street where no other vehicles were around. *Id.*

Appellant also cites *Davis v. State,* 77 Ark. App. 310, 74 S.W.3d 671 (2002), wherein the officers were held to have lacked reasonable suspicion to stop and detain the defendant where the only factors tending to lead to reasonable suspicion were the time of day and the incidence of crime in the neighborhood. However, this case was overturned by our supreme court in *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003), where the court stated:

Under a totality-of-the-circumstances test, the trial court concluded that this behavior gave rise to a reasonable suspicion. Appellant and another man were in a high crime area known for drug activity. They stood in a lot beside a vacant house when the officers saw a hand-to-hand exchange. As the officers approached, the men separated and walked quickly away. At that point, appellant gave Sergeant Ivy false information when asked his name and birth date. He also appeared nervous, fidgety, and sweated profusely. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Based upon our holding in [*Jefferson v. State,* 349 Ark. 236, 76 S.W.3d 850 (2002) ], as well as our rules of criminal procedure, we cannot say that the trial court erred in finding that the totality of the circumstances gave rise to a reasonable suspicion sufficient to stop and briefly detain the appellant. *See also* [*Potter v. State,* 342 Ark. 621, 30 S.W.3d 701 (2000) ] (reversing the court of appeals and holding that the officer was justified in making an investigatory stop of a man believed to be stalking a woman). Therefore, we conclude that the trial court did not err in finding that the totality of the circumstances gave rise to a reasonable suspicion sufficient to justify making an investigatory stop.

*Id.* at 417, 94 S.W.3d at 898.

Appellant further cites several cases in support of his argument that Officer Har-

ness did not have reasonable suspicion to stop him based upon the testimony that he was on patrol at 2:00 a.m., the area was known for drug activity, and that he did not stop appellant for speeding or for any other traffic violation. *See Stewart v. State,* 332 Ark. 138, 964 S.W.2d 793 (1998); *Meadows v. State,* 269 Ark. 380, 602 S.W.2d 636 (1980); *Barrientos v. State,* 72 Ark. App. 376, 39 S.W.3d 17 (2001); and *Jennings v. State,* 69 Ark. App. 50, 10 S.W.3d 105 (2000).

Finally, appellant maintains that the motion to suppress should have been granted based upon the totality of the circumstances, but was improperly denied by the circuit court. He argues that, because the evidence was obtained during an unlawful stop, the evidence should be deemed "fruit of the poisonous tree." *Summers v. State,* 90 Ark. App. 25, 203 S.W.3d 638 (2005).

The State claims that the initial stop of appellant's vehicle was supported by reasonable suspicion, and, thus, the trial court did not err by denying appellant's motion to suppress. In determining whether an officer had reasonable suspicion, courts must recognize that, "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Based on this reasoning, the State contends that the trial court did not err. We agree.

Officer Harness testified that it was 2:00 a.m., and he was patrolling "a particular area of town which is around Preston Street," where, at that time of year, "we have quite a few problems with people walking up and down the street, a

lot of drug activity, a lot of things going on over there that should not be going on, prostitution and such." When he turned behind appellant's vehicle, he noticed that appellant's car began to slow as it approached the intersection at Preston and Baltimore Street, another area where police had had numerous problems with drug activity. He saw the car begin to slow and then speed up and then slow down, and ultimately merge to the right-hand side of the road. The car slowed again, then sped up and again merged to the right side. The car sped up a bit, pulled back into the travel portion of the roadway, then turned right onto Park Street, which is not a through street. Officer Harness testified that the street is known for criminal activity. He further testified that it had been his experience that people driving under the influence of alcohol or another drug tend to exhibit those types of driving skills. He ultimately stopped appellant's car. Appellant then falsely identified himself to Officer Harness. After the officer handcuffed appellant and put him in the back of his patrol car, he took him to the station. When appellant got out of the car, Officer Harness discovered the contraband underneath the backseat.

Therefore, Officer Harness had reasonable suspicion to stop and detain appellant to determine whether he was driving under the influence of alcohol or drugs. The Arkansas Supreme Court has determined that "weaving across road lines at a substantial distance," *Hoay v. State,* 348 Ark. 80, 84, 71 S.W.3d 573, 575 (2002), and weaving from a highway's centerline to the shoulder at a late hour, *Piercefield v. State,* 316 Ark. 128, 871 S.W.2d 348 (1994), were circumstances that provided officers with reasonable suspicion to stop a vehicle to determine whether a suspect was driving under the influence. Here, the officer observed appellant, at 2:00 a.m., speeding

up and slowing down repeatedly, pulling to the side of the road twice, and ultimately turning into a dead-end road in an area known for criminal activity. Therefore, the officer had reasonable suspicion.

Affirmed.

GLOVER and BROWN, JJ., agree.