
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–15–502

WILLIAM DANIEL MEEKS
APPELLANT

V.

STATE OF ARKANSAS
APPELLEE

**OPINION DELIVERED** JANUARY 13, 2016

APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT
[NO. CR-14-2118-6]

HONORABLE MARK LINDSAY, JUDGE

REVERSED AND REMANDED

---

## ROBERT J. GLADWIN, Chief Judge

Pursuant to Arkansas Rule of Criminal Procedure 24.3 (2014), appellant William Daniel Meeks entered a conditional plea of guilty in the Washington County Circuit Court to the charge of DWI-First Offense. On appeal, Meeks argues that Fayetteville Police Officer Kristin Mercado seized him by conducting a traffic stop without reasonable suspicion as required by Arkansas Rule of Criminal Procedure 3.1 (2014) and that the stop was not authorized by Officer Mercado's community-caretaking function or any emergency-aid exception. We agree; accordingly, we reverse and remand.

### I. *Facts*

The facts of this case are undisputed. On March 16, 2014, at approximately 1:00 a.m., Officer Mercado observed a black Chevy Tahoe parked in the Marvin's IGA parking lot approximately fifty feet off of the nearest public road. Marvin's IGA was closed. The Tahoe was parked and not moving, and there were no other vehicles in close proximity.

SLIP OPINION

As she was driving past the parking lot, Officer Mercado observed that the passenger-side door was open and that a passenger was leaning out of the vehicle vomiting. She observed the passenger vomiting for ten-to-fifteen seconds. Officer Mercado turned right into the parking lot, stopped behind the Tahoe, and placed her spotlight on the vehicle, but she did not activate her blue lights at this time. She was not responding to any call concerning this vehicle, Marvin's IGA, or the parking lot.

Prior to Officer Mercado getting out of her vehicle, but after she pulled in behind the Tahoe, the passenger finished vomiting, sat back up in the vehicle, and closed the passenger door. After the passenger shut the passenger door, Meeks—who was driving the Tahoe—started to drive toward an exit from the parking lot. Prior to Meeks's attempt to drive away, Officer Mercado did not do anything to indicate to Meeks that he needed to remain, that he should not leave, or that he needed to stop and talk to Officer Mercado. As Meeks was starting to exit the parking lot, he did not spin or squeal his tires, and he did not drive in an erratic, careless, or reckless manner.

Just as Meeks began to drive away, but while still in the parking lot, Officer Mercado activated her blue lights and notified dispatch that she was conducting a traffic stop. Before she activated her blue lights, Officer Mercado did not see Meeks commit any traffic violations or criminal acts, and Meeks immediately pulled into a parking place very close to where he had originally stopped the vehicle. Officer Mercado ultimately arrested Meeks and charged him with DWI-First Offense.

Meeks filed a motion to suppress illegally obtained evidence on December 23, 2014. The motion asserted that Officer Mercado illegally stopped, detained, seized, and searched

Meeks without a warrant in violation of the Fourth Amendment to United States Constitution, article 2, section 15 of the Arkansas Constitution, and the Arkansas Rules of Criminal Procedure. The circuit court conducted a hearing on the motion on February 13, 2015, and subsequently denied the motion.

After the denial of the motion, Meeks entered a conditional plea on the charge of DWI–First Offense. The circuit court sentenced Meeks to a fine of $600; $300 in court costs; $20 in booking/administrative fees; and ninety days in the county jail, with eighty-eight of those days suspended, and credit given for one day already served pursuant to a February 19, 2015 sentencing order. Meeks filed his timely notice of appeal on March 20, 2015.

## II. *Standard of Review*

Meeks raises two points in this appeal, both of which relate to the circuit court's decision to deny his motion to suppress. The standard of review is the same for both points. In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *E.g.*, *Johnson v. State*, 2015 Ark. 387, 472 S.W.3d 486. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the superiority of the circuit court to evaluate the credibility of

SLIP OPINION

witnesses who testify at a suppression hearing. *Id.* We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*

III. *Illegal Seizure by Conducting a Traffic Stop Without Reasonable Suspicion as Required By Arkansas Rule of Criminal Procedure 3.1*

Meeks asserts that he was pulled over by Officer Mercado while obeying the law, committing no traffic or criminal violations, and doing nothing more than he had the legal right to do. In Arkansas, all police-citizen encounters are classified into one of three categories: (1) a consensual, voluntary encounter; (2) a seizure; or (3) an arrest. *See Cockrell v. State*, 2010 Ark. 258, 370 S.W.3d 197. All police-citizen encounters are transformed into a seizure when a reasonable person would believe that he is not free to leave. *See id.* It is well settled in Arkansas that a person is "seized" by a police officer when the police officer effectuates a traffic stop by using blue lights. *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997); *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997); *Stevens v. State*, 91 Ark. App. 114, 208 S.W.3d 843 (2005).

Meeks asserts, and the State acknowledged at the oral argument on this appeal, that he was seized by Officer Mercado within the meaning of the Fourth Amendment to the United States Constitution and article 2, section 15, of the Arkansas Constitution at the time she activated her blue lights to conduct a traffic stop on the vehicle driven by Meeks. These constitutional protections extend to even brief investigatory stops of persons or vehicles. *See Terry v. Ohio*, 392 U.S. 1 (1968); *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Both the federal and state constitutional provisions are nearly identical and prohibit unreasonable searches and seizures not supported by probable cause or reasonable suspicion. *See* U.S.

Const. amend. IV; Ark. Const., art. II, § 15. The remaining question is whether Officer Mercado had probable cause to do so. We hold that she did not.

In Arkansas, a law enforcement officer lawfully present in any place may seize any person or vehicle if the officer has, under the totality of the circumstances, specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *See Cockrell, supra.* Essentially, a seizure must be based on a reasonable suspicion that the person has committed or is about to commit a crime. Rule 3.1 of the Arkansas Rules of Criminal Procedure authorizes a police officer to stop and detain any person who he or she reasonably suspects is committing, has committed, or is about to commit (1) a felony or (2) a misdemeanor involving danger of forcible injury to persons or property. Our supreme court has defined "reasonable suspicion" as suspicion that is based on facts or circumstances which give rise to more than a bare, imaginary, or purely conjectural suspicion. *See Hammons, supra.* Further, a police officer is justified in making a traffic stop if he or she has probable cause to believe that the vehicle has violated a traffic law. *See Whren v. United States*, 517 U.S. 806 (1996); *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004); *Mosley v. State*, 2009 Ark. App. 799, 370 S.W.3d 273. Accordingly, before Officer Mercado could stop Meeks using her blue lights, she needed to have reasonable suspicion that he had committed a crime or probable cause to believe that he had committed a traffic violation. Meeks notes that based upon Officer Mercado's own testimony, she had neither.

Officer Mercado specifically testified that she did not see Meeks commit any traffic violations or any criminal act before she activated her blue lights. The following colloquy occurred during the cross-examination of Officer Mercado:

> MR. NELSON: Before you turned the blue lights on did you see Mr. Meeks commit any traffic violations?
>
> OFFICER MERCADO: No, sir.
>
> MR. NELSON: Did you see him commit any criminal acts?
>
> OFFICER MERCADO: No, sir.

Officer Mercado testified honestly and truthfully that she did not see Meeks commit any traffic violations or criminal acts. She testified that she was not "making a traffic stop" at this time because she had not "observe[d] any infractions." She explained that she "was just pulling in to check on the vehicle and the occupants." Based on that testimony, combined with our de novo review of the dash-cam video of the stop, we hold that the circuit court's denial of Meeks's motion to suppress was clearly erroneous. Officer Mercado did not observe anything that would lead a reasonable person to suspect that either Meeks or his passenger was committing any crime. The only information known about Meeks's passenger was that he was leaning out of a vehicle and vomiting. This act gives rise to a suspicion only that the passenger was sick, the cause of which is irrelevant because, whether due to a stomach virus, a gastrointestinal condition, eating too much, drinking alcohol, or any combination of these things, none of these things is illegal in Arkansas. At this point, there existed no fact that could give rise to reasonable suspicion or probable cause of any crime or traffic violation in the mind of an objectively reasonable officer knowing what Officer Mercado knew at the time.

Officer Mercado testified that the only thing that changed between the time she first pulled in and the time it took her to activate her blue lights was Meeks starting to drive away. Based on our viewing of the dash-cam video, the other thing that changed was that the passenger stopped throwing up, sat back up, and closed the vehicle door. Meeks's vehicle was not parked in a manner taking up several parking spots but was, instead, stopped in the driving lane of the parking lot. It was clear that the brake lights were on, and the vehicle was sitting stationary while the passenger was leaning out of his open door vomiting. It appeared that the passenger door was open for only a few seconds. Though difficult to see, it appeared that Officer Mercado's spotlight was turned on and was pointed in the direction of Meeks's vehicle while the passenger was still vomiting, that a few seconds went by, the passenger door closed, and the vehicle started to leave.

A review of the dash-cam video confirms that Meeks did not flee from or evade Officer Mercado. He simply left after it was safe to do so, after his passenger was back inside the vehicle with the door shut. Under these specific circumstances, we reverse the circuit court's conclusion that Meeks's act of leaving amounted to an attempted flight or an evasive procedure that somehow gave Officer Mercado reasonable suspicion to then activate her blue lights and conduct a traffic stop on Meeks's vehicle.

IV. *Illegal Seizure by Conducting a Traffic Stop Not Authorized by the Community-Caretaking Function or Emergency-Aid Exception*

Because Officer Mercado's stop of Meeks was not supported by Rule 3.1, we next analyze whether the stop of Meeks was authorized by Officer Mercado's community-caretaking function or an emergency-aid exception. Under these particular circumstances, we hold that these theories also do not support Officer Mercado's stop.

In *Cady v. Dombrowski*, the United States Supreme Court held that a search of the trunk of a disabled vehicle without a warrant did not violate the Fourth and Fourteenth Amendments, explaining that local police officers frequently "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441 (1973). Courts from the Eighth Circuit and the State of Arkansas have acknowledged that certain situations give rise to an officer's community-caretaking functions. For example, as part of the community-caretaking function, an officer is authorized to respond to the scene of an accident and make contact with those present when a vehicle is partly in the roadway. *See United States v. Smith*, 162 F.3d 1226 (8th Cir. 1998). In addition, an officer is authorized to respond to the report of a stolen vehicle found abandoned and constituting a hazard on a public highway and to perform an inventory search pursuant to department policy. *See Lipovich v. State*, 265 Ark. 55, 576 S.W.2d 720 (1979). An officer is even authorized pursuant to the community-caretaking function to have a vehicle towed and to perform an inventory search pursuant to department policy after arresting a driver on outstanding warrants. *See Colyer v. State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983).

This court recognized the existence of an officer's "community caretaking function" in *Blakemore v. State*, 25 Ark. App. 335, 758 S.W.2d 425 (1988). In *Blakemore*, a deputy approached a vehicle with its motor running and lights on. The deputy observed that the driver was "either asleep or passed out" in the front seat. *Blakemore*, 25 Ark. App. at 336–37, 758 S.W.2d at 426. After the deputy repeatedly knocked on the window, the driver

woke up, and the deputy smelled alcohol and observed appellant stumble when he got out of his vehicle. *Id.* This court held that "[a]lthough he did not see any blood or physical injuries, Deputy Rushing did not know if the appellant was ill, drunk, or merely asleep. Given these circumstances we believe that Deputy Rushing, as part of his community caretaking function, was justified in knocking on the appellant's window to question him and make an inquiry." *Id.* at 340, 758 S.W.2d at 428–29.

More recently, in *Szabo v. State*, 2015 Ark. App. 512, 470 S.W.3d 696, this court permitted an officer to detain a driver for further investigation pursuant to the community-caretaking function. As in *Blakemore, supra*, an officer approached a vehicle and observed the driver in the front seat, unconscious, with the motor running. After the driver failed to respond to the officer knocking on his window, the officer continued his community-caretaking function by opening the unlocked door.

In 2001, the Eighth Circuit also addressed an officer's community-caretaking functions. *See Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001). In *Winters*, the police officers responded to a report of an intoxicated person exiting and reentering a vehicle on a dead-end street. *See id.* When the police officers arrived on scene, they made consensual contact with an individual sitting in the driver's seat of the only vehicle on the dead-end street. *See id.* After some discussion between an officer and the driver, the driver raised the car window, locked the door, and stated that he wished to be left alone. *See id.* Officers then observed the occupant of the vehicle begin to sweat, to behave strangely and extremely hyper, to move wildly about the car, to become highly agitated, and to yell at the police officers to leave him alone. *See id.* The officers testified that they began to suspect that the suspect was

under the influence of an illegal drug and was possibly overdosing. *See id.* The officers therefore decided to make entry into the vehicle. *See id.* The Eighth Circuit found that the police contact was justified because there had been enough observations by the police officers to suspect that the suspect was intoxicated on some substance and was a danger to himself and others. *See id.*

There are factors distinguishing *Winters*, *Szabo*, and *Blakemore* from the present case. First, Officer Mercado was not responding to any type of report, let alone an intoxicated person or a vehicle with a visibly impaired driver. Second, Meeks never said or did anything to give Officer Mercado the impression that Meeks needed her help. The correct standard, and what Officer Mercado must show to justify her actions based on an alleged medical emergency, is that she had an objective basis for believing that someone in the vehicle was in immediate need of medical assistance or was in imminent danger. *See Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Miller v. State*, 2010 Ark. 1, 362 S.W.3d 264.

A case from the Texas Court of Appeals, *Andrews v. State*, 79 S.W.3d 649 (Tx. Ct. App. 2002), is instructive. In *Andrews*, a police officer saw a vehicle pull to the paved shoulder of Interstate 45 at 1:00 a.m., and he saw a female lean out of a passenger door and begin vomiting. *Id.* The officer pulled up behind the vehicle, at which time the passenger shut her door and the vehicle began to pull away. *See id.* The officer then activated his blue lights and stopped the vehicle. *See id.* In deciding whether the stop was justified by the officer's community-caretaking function, the court analyzed four factors: (1) the nature and level of distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of the officer;

and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *See id*. After pointing out that there was another individual on scene, the driver, who was able to assist the individual vomiting and that nothing indicated that the passenger's condition was any more serious than an upset stomach, the *Andrews* court held that this stop was not justified by a community-caretaking function. *Id*.

The present case is factually similar to *Andrews*. The vomiting passenger likewise showed no signs of having anything more serious than an upset stomach. Nothing indicated that Meeks could not provide whatever assistance the passenger needed, and neither Meeks nor the passenger indicated a need or desire for assistance from Officer Mercado. *See also Wright v. State*, 18 S.W.3d 245, 246 (Tx. Ct. App. 2000). The officers in *Wright* stopped a vehicle out of concern for the welfare of the passenger after observing him leaning out of the rear window and vomiting at 4:00 a.m. *See id*. The court held that the traffic stop was an illegal seizure, noting that (1) the vomiting person was a passenger in a car that was being driven in a lawful manner; (2) the passenger appeared to be having some gastric distress, but that the driver appeared to be able to aid the passenger; (3) no one in the vehicle indicated that they needed help from the officer; and (4) nothing indicated that the officer's assistance was necessary or would add to the comfort or welfare of the passenger. *See id*.

We contrast these facts with those in the recent Nebraska Court of Appeals case that examined this issue and reached the opposite conclusion. In *State v. Rohde*, , 864 N.W.2d 704 (Neb. Ct. App. 2015), the court examined at length opinions from courts across the country that both favor and oppose the ability of an officer to offer assistance in cases involving a passenger, rather than the driver. *Id*. The court concluded that the community-

caretaking function applies equally to drivers and passengers, and, based on factors such as those listed in *Andrews*, it held that it was reasonable for the officer in that case to stop a car where the officer observed a female passenger's upper body was sticking out through the moon roof of a moving vehicle waving her arms in order to determine if she may have been trying to wave him down for assistance. For this reason, the officer activated his blue lights and stopped the vehicle. *See id*. The Nebraska Court of Appeals upheld the stop based on the officer's community-caretaking function because the officer could have reasonably concluded that the passenger was "attempting to flag him down to obtain his assistance." *See id*. In this case, Meeks and his passenger did just the opposite of the passenger in *Rohde*. Meeks and his passenger did nothing to indicate that they wanted or needed Officer Mercado's assistance.

Although the police have the right to respond to emergency situations, the Fourth Amendment bars police officers from engaging in a warrantless seizure based on an alleged medical condition unless the police officer can show that it was objectively reasonable to believe that a person was in need of immediate aid or was in imminent danger. *See Mincey*, *supra*; *Miller*, *supra*. There must be an objectively reasonable basis for believing that medical assistance was needed or persons were in danger. *Miller*, *supra*. In this case, there are no facts to indicate that Meeks or his passenger was in imminent danger or that anyone in the vehicle was in need of immediate aid. When viewed objectively, it is clear that it was unreasonable for Officer Mercado to think that Meeks or his passenger was in imminent need or danger of any of these things. Therefore, there was no emergency that authorized Officer Mercado's stop of Meeks under the facts of this case.

We hold that the circuit court erred by denying Meeks's motion to suppress because Officer Mercado acted unreasonably and illegally seized Meeks in violation of the Fourth Amendment to the United States Constitution and article 2, section 15, of the Arkansas Constitution. When viewed objectively, there are no facts that could lead a reasonable person to think that either Meeks or his passenger was in immediate need of medical assistance or was in imminent danger. The circuit court should have granted the motion, and all evidence obtained after this illegal seizure should have been suppressed. Accordingly, we reverse and remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

GLOVER and VAUGHT, JJ., agree.

*Norwood & Norwood, P.A.*, by: *Jon Nelson* and *Doug Norwood*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.