On April 10, 2017, Taff was charged with one count of simultaneous possession and one count of possession of controlled substance schedules I, II with intent to deliver. He filed a motion to suppress physical evidence on August 25, 2017, arguing that law enforcement officers had illegally detained him. A hearing was held on Taff's motion on October 24, 2017, during which Officer Davis testified that he had known Lee-who called in the report to dispatch-for fifteen years and that Lee was reliable and not easily alarmed. Officer Davis testified that he pulled over to make contact with Taff to "investigate suspicious behavior" and "to see what was going on" in order to "protect the community." Officer Davis acknowledged that he did not see Taff commit any traffic violations or criminal acts before initiating his blue lights.
With respect to the stop, Officer Davis explained that when he pulled in behind Taff, Taff "didn't act like he wanted to be talked to or anything to that matter." Officer Davis acknowledged that the mere possession of a gun is not a crime, but he also testified that he was concerned that after *880 "[s]eeing the outline of the pistol," he felt that Taff "could possibly pull his weapon and do harm to Deputy Bartell or him."
On cross-examination, Officer Davis specifically denied that he was investigating a crime when he initiated his blue lights:
COUNSEL : When you activated your blue lights on 270 to stop Mr. Taff, were you investigating a crime?
CHAD DAVIS : No, sir, it was a suspicious person, the way he was acting.
Officer Davis confirmed that the information he received about Taff's behavior in the store did not involve the commission of any crime; any threats made by Taff; any theft of property by Taff; any brandishing of a weapon by Taff; any mention that Taff had any unlawful intent with the pistol; or any mention that Taff was getting physical with anyone. Further, he acknowledged that he later heard on the second call from dispatch that Taff had left the vicinity of the store and was walking along Highway 270 away from the store and toward the county line. Officer Davis acknowledged that Taff had walked approximately two miles by the time he first encountered Taff about twelve minutes after the initial dispatch message.
After Officer Davis testified, Taff argued that he was seized for purposes of the Fourth Amendment when Officer Davis initiated his blue lights. Taff asserted that Officer Davis lacked reasonable suspicion under Arkansas Rule of Criminal Procedure 3.1 (2017) that Taff was committing or had committed a crime to justify the seizure. Taff acknowledged that Officer Davis "could have conducted a consensual encounter and asked [Taff] to speak to them," but he argued that instead, Officer Davis "seized him absent reasonable suspicion."
In response, the State reiterated that Officer Davis initiated contact with Taff to determine the lawfulness of his behavior after hearing from a reliable source that Taff had acted suspiciously at the Joplin Store, had gone in and out of the store several times, and had been carrying a gun. The circuit court found that once Officer Davis activated his blue lights, "it would not have been unreasonable for [Taff] to feel that he was not free to leave." The circuit court further found that under such circumstances, Officer Davis would have needed reasonable suspicion under Rule 3.1 to detain Taff but that based on the totality of the circumstances, "it was certainly not unreasonable for the officer to detain [Taff] for the purpose of verifying his identification and to determine the lawfulness of his conduct." The circuit court denied Taff's motion to suppress.
On January 23, 2018, Taff entered a conditional plea to both charges pursuant to Rule 24.3(b)(i), which was approved by the circuit court. Taff was sentenced to fifteen years on each count to be served concurrently pursuant to a sentencing order filed on January 23, 2018. Taff filed a timely notice of appeal on the same date, and this appeal followed.
II. Standard of Review and Applicable Case Law
In reviewing a circuit court's denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause. See Meeks v. State , 2016 Ark. App. 9, at 3, 479 S.W.3d 559, 561. This court will reverse only if the circuit court's ruling was clearly against the preponderance of the evidence. Id.
Both the federal and Arkansas constitutions prohibit unreasonable searches or seizures not supported by probable cause *881 or reasonable suspicion. See U.S. Const. amend. 4 ; Ark. Const. art. 2, § 15. Arkansas appellate courts have held that a person is "seized" for purposes of the Fourth Amendment when law enforcement effectuate a stop by using their blue lights. See Hammons v. State , 327 Ark. 520, 940 S.W.2d 424 (1997) ; State v. McFadden , 327 Ark. 16, 938 S.W.2d 797 (1997) ; Meeks , 2016 Ark. App. 9, at 4, 479 S.W.3d at 561 ; Stevens v. State , 91 Ark. App. 114, 208 S.W.3d 843 (2005).
Rule 3.1 authorizes a police officer to stop and detain any person whom he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to people or property. Meeks , 2016 Ark. App. 9, at 5, 479 S.W.3d at 562. Further, a police officer is justified in making a traffic stop if the officer has probable cause to believe that the vehicle has violated a traffic law. See Whren v. United States , 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ; Sims v. State , 356 Ark. 507, 157 S.W.3d 530 (2004). Before an officer can use blue lights to stop someone, the officer must have reasonable suspicion that the person committed a felony or dangerous misdemeanor, or probable cause to believe the person committed a traffic violation. Meeks , 2016 Ark. App. 9, at 5, 479 S.W.3d at 562.
III. Discussion
Taff argues that pursuant to Arkansas law and based on Officer Davis's testimony, law enforcement officers lacked the reasonable suspicion necessary to conduct the initial seizure by initiating blue lights. He asks this court to determine whether the mere possession of a pistol in his waistband constituted reasonable suspicion sufficient to seize him pursuant to Rule 3.1.
Taff submits that he was seized by law enforcement while simply walking along a public road, obeying the law, and committing neither traffic nor other criminal violations. Taff argues that bare allegations that an individual acted "suspiciously" or "funny" are not proper bases to seize someone under the Fourth Amendment to the United States Constitution, which requires articulable facts. See United States v. Monsivais , 848 F.3d 353 (5th Cir. 2017) ; see also Sims , supra. Taff contends that the seizure, which occurred when officers effectuated a stop by using blue lights, was illegal because it was absent probable cause to believe there was the commission of a traffic violation or reasonable suspicion of any crime. Accordingly, Taff argues that all items recovered pursuant to the subsequent search of his person were fruits of the poisonous tree that must be suppressed. See Wong Sun v. United States , 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ; Keenom v. State , 349 Ark. 381, 80 S.W.3d 743 (2002).
We find no merit in the State's argument that, pursuant to Rule 3.1, Taff was not "seized" when Officer Davis initiated his blue lights because Taff did not submit to the show of authority. The State cites California v. Hodari D. , 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ; Smith v. State , 343 Ark. 552, 39 S.W.3d 739 (2001) ; and Stewart v. State , 42 Ark. App. 28, 853 S.W.2d 286 (1993), in an attempt to distinguish these facts from the previously cited "blue-light" seizure cases, arguing that Taff did not submit to the officers' show of authority. The record indicates that, upon becoming aware of the blue lights behind him, Taff turned to look back, shook his head, and took a couple of steps before turning and stopping in front of the officer's vehicle. There is no indication that Taff attempted to flee as in Hodari or Stewart or even kept walking at *882 his normal pace; rather, he did stop and face the officers in an affirmative showing of submission to the blue lights. While we acknowledge that Taff then put his hand in his left pants pocket, which led Officer Davis to draw his weapon in anticipation of Taff reaching for his gun, the illegal seizure had already occurred the moment the officers engaged their patrol cruiser's blue lights and approached him on the side of the highway. Accordingly, we hold that the circuit court correctly found that it was reasonable that Taff would not have felt free to leave once the officers initiated the blue lights, see, e.g. , Hammons , supra ; McFadden , supra ; Meeks , supra ; Stevens , supra ; accordingly, the officers were required to have reasonable suspicion to justify the seizure.
Under Rule 3.1, a law enforcement officer may "stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property." " 'Reasonable suspicion' means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion." Ark. R. Crim. P. 2.1 (2017). An officer has reasonable suspicion under the totality of the circumstances when the officer has specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. E.g. , James v. State , 2012 Ark. App. 118, at 6-7, 390 S.W.3d 95, 99.
The State notes that this court has explained that with respect to Rule 3.1, "the key word is 'suspects,' and reasonable suspicion does not require that an officer 'rule out the possibility of innocent conduct.' " Casey v. State , 2016 Ark. App. 98, at 7, 483 S.W.3d 327, 331. In determining whether an officer had reasonable suspicion, courts recognize that "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." Mosley v. State , 2009 Ark. App. 799, at 7, 370 S.W.3d 273, 277.
But here, by Officer Davis's own testimony, he was not investigating a crime at the time he engaged the blue lights. Taff was not suspected of having committed either a crime or a traffic violation. There was no conduct by him that the officers needed to determine the lawfulness of because the officers lacked any reasonable suspicion of the commission ofa crime. See Ark. R. Crim. P. 3.1. Merely "acting suspicious" does not equate to reasonable suspicion under either the Fourth Amendment or Arkansas law.
The State argued that Officer Davis seized Taff because he "had to determine the lawfulness of [Taff's] conduct going in and out of the store and carrying that weapon and acting suspiciously." Merely possessing a weapon is not a crime in the State of Arkansas. See Ark. Code Ann. § 5-73-120(a) (providing that "[a] person commits the offense of carrying a weapon if he or she possesses a handgun ... on or about his person ... with a purpose to attempt to unlawfully employ the handgun ... as a weapon against a person"); see also Op. Ark. Att'y No. 064 (2015) ("[I]n general merely possessing a handgun on your person ... does not violate § 5-73-120(a) and may be done if it does not violate other laws or regulations."). Under the clear language of section 5-73-120(a), the possessor of a handgun must have an unlawful intent to employ it as a weapon against a person in order to make that possession a criminal *883 act. Under the rule of lenity, any doubts as to the interpretation of a criminal statute are resolved in favor of the defendant. See Williams v. State , 364 Ark. 203, 208, 217 S.W.3d 817, 819-20 (2005).
There is nothing in the record before us to indicate that Taff demonstrated any sort of unlawful intent with the weapon prior to the engagement of the blue lights-such as threatening someone at the store or brandishing the weapon-that would have given officers reasonable suspicion of a crime sufficient to effectuate the stop with the blue lights. To the contrary, Officer Davis's testimony was clear that there were no indicators of unlawful activity or intent and that he had no information that would have indicated Taff's possession of a gun was unlawful.
Moreover, the fact that Taff had walked two miles away from the store and was on his way out of the county at the time of his encounter with officers is evidence that supports his intent to leave Montgomery County rather than to commit a crime within its borders.
We hold that under the totality of the circumstances, the officers' effectuation of a stop with blue lights without reasonable suspicion constituted an illegal seizure, and the circuit court's denial of Taff's motion to suppress all physical evidence stemming from the initial seizure of his person was against the preponderance of the evidence. Because the seizure was illegal and unconstitutional, all evidence seized as a result of this initial illegality should have been suppressed. Accordingly, we reverse and remand for a new trial.
Reversed and remanded.
Abramson and Murphy, JJ., agree.