2012 Ark. App. 118

**Pattie Jo JAMES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–721.**

Court of Appeals of Arkansas.

Feb. 8, 2012.

David R. Cannon, North Little Rock, for appellant.

Lauren Elizabeth Heil, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

⌊₁Appellant Pattie Jo James appeals from her conditional guilty pleas to charges of possession of a controlled sub-

stance and possession of drug paraphernalia in the Arkansas County Circuit Court, for which she was sentenced to one year in a regional punishment facility followed by five years' probation. Appellant argues that the circuit court erred in denying (1) her motion to suppress a statement made by her that was obtained without officers advising her of her *Miranda* rights, and (2) her motion to suppress evidence resulting from an unconstitutional seizure of her person. We reverse the circuit court's denial of appellant's motion to suppress the initial statement made prior to arrest but affirm on the motion to suppress the evidence subsequently seized.

Appellant was arrested and charged with one count of possession of a controlled substance with intent to deliver in violation of Arkansas Code Annotated section 5–64–401 (Repl.2005), and one count of possession of drug paraphernalia in violation of Arkansas Code Annotated section 5–64–403 (Repl.2005). The circuit court held a suppression hearing on November 15, 2010, and denied appellant's motions to suppress her statement and evidence subsequently seized. Upon the circuit court's denial of appellant's motions, appellant entered a conditional plea of guilty, pursuant to Arkansas Rule of Criminal Procedure 24.3(b), reserving the denial of her motions for appeal.

On October 21, 2009, Special Investigator David Chastain of the Arkansas State Police received information from Mr. Alex Pike, who he knew had provided information to law enforcement on two previous occasions that led to one arrest and the issuance of a search warrant. Mr. Pike reported that Misti Michelle O'Dell and another unknown individual were bringing crystal methamphetamine from Little Rock to DeWitt. Mr. Pike informed Investigator Chastain, over the course of several phone calls, that Ms. O'Dell and

the unknown individual were meeting Mr. Pike at Kelly Snyder's residence in Almyra. Mr. Pike told Investigator Chastain that Ms. O'Dell said that she would be making the delivery in a white Honda Civic or Accord; however, Mr. Pike indicated that Ms. O'Dell was not "being honest about what vehicle she was in."

Investigator Chastain, who knew where Ms. Snyder lived, immediately drove to the residence. Within a matter of minutes of his arrival near Ms. Snyder's residence, two females in a black Honda arrived at the residence and parked in the driveway. Investigator Chastain parked his own vehicle behind the black Honda and approached the driver's side, whereupon he recognized Ms. O'Dell sitting in the passenger seat. Because Ms. O'Dell apparently "was trying to hide something," Investigator Chastain told her to put her hands on the dash and keep them on the dash, and then asked appellant to step out to the rear of the vehicle with him. Investigator Chastain identified himself to appellant, told her that he knew there were drugs in the vehicle, and asked her where they were. Appellant nodded at Ms. O'Dell, at which point Investigator Chastain asked, "[D]oes she have them?" Appellant answered in the affirmative. Investigator Chastain acknowledged that he did not advise the appellant of her *Miranda* rights before asking her the foregoing questions.

After talking with appellant, Investigator Chastain asked Ms. O'Dell to step out of the car, at which time he noticed a clear plastic baggie containing what he believed to be crystal methamphetamine lying on the passenger seat where she had been sitting. Investigator Chastain also noticed a glass pipe, and a more thorough search of the vehicle revealed a black plastic box that contained a spoon, several small baggies, a straw, and two plastic baggies that

apparently contained methamphetamine. Investigator Chastain also found a syringe in Ms. O'Dell's purse. Investigator Chastain arrested appellant and Ms. O'Dell for possession of methamphetamine with intent to deliver and possession of drug paraphernalia and transported them to the Arkansas County Detention Center. Subsequently, Investigator Chastain advised appellant of her *Miranda* rights, and she gave a more complete statement explaining how she obtained the methamphetamine and identifying her supplier.

On review of a trial court's decision on a motion to suppress evidence, this court reviews the trial court's factual determinations for clear error, while reviewing its legal conclusions de novo. *See Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Consistent with this standard, this court defers to the superior position of the trial court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination based on the totality of the circumstances. *Id.*

### I. *Suppression of Initial Statement*

Appellant claims that her convictions for possession of methamphetamine and possession of drug paraphernalia should be reversed because the circuit court erred when it ruled that her statement taken prior to appellant being advised of her *Miranda* rights was admissible. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established that a person must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time that a person is taken into custody for questioning. Custody occurs not only upon formal arrest, but also under any circumstances where the suspect is deprived of his freedom of movement. *California v. Beheler*, 463

U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). In determining whether a suspect is in custody, we must consider the totality of the circumstances and how a reasonable man in the suspect's position would have understood his situation. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Ultimately, however, the determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

The contact between Investigator Chastain and appellant was not the result of a routine traffic stop, which by its very nature is less obtrusive and coercive than contact relating to a criminal investigation. *See Conway v. State*, 62 Ark.App. 125, 969 S.W.2d 669 (1998). Investigator Chastain specifically admitted that he blocked appellant's vehicle to prevent her from leaving. Also unlike *Conway*, appellant was not allowed to remain in her vehicle. Appellant was moved to the rear of her vehicle where Investigator Chastain had control of the situation.

Contact between appellant and Investigator Chastain was the result of a criminal investigation. *See Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985). In *Shelton*, the defendant was removed from his residence. In this case, appellant was removed from her vehicle. In both cases, individuals were removed from areas under their control and placed into areas under the control of law enforcement.

This is not the scenario envisioned by the Supreme Court when it held that an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *See Berkemer, supra.*

Investigator Chastain blocked the vehicle in the driveway, ordered Ms. O'Dell to remain in the vehicle with her hands on the dash, and demanded that appellant move to the back of the vehicle. He then informed appellant that he knew there were drugs in the vehicle and asked her where they were located. The safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer*, 468 U.S. at 440, 104 S.Ct. 3138. The determination of custody "depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being interrogated." *Hall v. State*, 361 Ark. 379, 389, 206 S.W.3d 830, 837 (2005).

We find merit in appellant's argument that the circuit court clearly erred when it ruled that appellant was not in custody for purposes of *Miranda* warnings. Under the totality of the circumstances, based upon these particular facts, we hold that a reasonable person in appellant's position would not have felt he or she was free to leave, and therefore appellant should have been advised of her right to remain silent by Investigator Chastain prior to being questioned by him. Accordingly, her initial statements to Investigator Chastain at Ms. Snyder's residence should have been suppressed. We reverse on this point and remand to the circuit court for further proceedings.

## II. *Suppression of Evidence*

Pursuant to Arkansas Rule of Criminal Procedure 3.1, a police officer may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or damage to property. "Reasonable suspicion" is defined as a suspicion based on facts or circumstances, which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion. Ark. R.Crim. P. 2.1. The determination of whether an officer has reasonable suspicion under the totality of the circumstances includes whether an officer has specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001).

Appellant argues that the record is clear that she was not the subject of a traffic stop by Investigator Chastain, as he admitted that he did not observe appellant commit any traffic violations. Because Investigator Chastain's stop and detention did not involve a traffic stop, he was required to have a reasonable suspicion that appellant committed or was about to commit a felony or a misdemeanor involving damage to property or forcible injury to a person. *See* Ark. R.Crim. P. 3.1.

Appellant claims that Investigator Chastain did not have the requisite specific particularized suspicion that she committed or was about to commit a felony or misdemeanor. She reiterates that Investigator Chastain testified that he received information from Mr. Pike that Ms. O'Dell would be in a white Honda Accord or Civic, but he admitted that Mr. Pike did not necessarily believe that to be the case. She was operating a black vehicle, and he acknowledged that he was not able to discern the identity of the occupants of the vehicle until after he blocked the vehicle and approached it in the driveway. Appellant submits that Investigator Chastain did not observe her commit any felonies.

Appellant also notes that none of the facts at Investigator Chastain's disposal were specific or particularized to her. Appellant's vehicle did not match the descrip-

tion given to Investigator Chastain, and he had no knowledge as to who was occupying the vehicle. She asserts that Investigator Chastain was merely "fishing," stopping a vehicle simply because it pulled into Ms. Snyder's driveway. Arguing that Investigator Chastain could have easily obtained reasonable suspicion by simply continuing surveillance until he was able to observe the occupants of the vehicle, appellant asserts that the circuit court clearly erred when it denied her motion to suppress evidence obtained as a result of an unconstitutional detention.

We disagree. Despite the reversal of the circuit court's admission of appellant's initial statement, suppression of the evidence seized from her car is not warranted.

Regarding an officer's ability to stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony, pursuant to Rule 3.1, the key word is *suspects, see Potter v. State*, 342 Ark. 621, 30 S.W.3d 701 (2000), and "[a] determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Moreover, "[t]he justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity," and the facts articulated by an officer are considered together, not in isolation. *Davis*, 351 Ark. at 415, 94 S.W.3d at 897.

The "whole picture must be taken into account," and "the process does not deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Circumstances that are frequently considered include any knowledge the officer may have of the suspect's background or character; any information received from third persons, whether they are known or unknown; and whether the suspect is consorting with others whose conduct is reasonably suspect. Ark.Code Ann. § 16–81–203 (Repl.2005).

In determining whether an officer had reasonable suspicion, courts must recognize that, "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Cortez*, 449 U.S. at 419, 101 S.Ct. 690. Under these standards, we hold that the circuit court did not err by denying the appellant's motion to suppress.

Investigator Chastain received information from a reliable known informant that Ms. O'Dell and a companion were delivering methamphetamine to Ms. Snyder's house in Almyra. Investigator Chastain knew both Ms. O'Dell and Ms. Snyder, and the informant apparently was relaying information about the delivery while Ms. O'Dell and appellant were en route to De-Witt. Consistent with Mr. Pike's ongoing report of their progress, a car "with two females in it" arrived "within a matter of minutes" of Investigator Chastain's arrival at Ms. Snyder's house. Appellant's arrival in a black Honda, as opposed to a white Honda as Mr. Pike originally reported, does not undermine Investigator Chastain's reasonable suspicion that appellant's car was carrying Ms. O'Dell and methamphetamine. As Investigator Chastain testified, Mr. Pike expressed his doubt that Ms. O'Dell was truthful when she described the car she was traveling in, and, as stated, the black Honda's arrival at Ms. Snyder's house apparently was consistent

with Mr. Pike's ongoing reports of appellant's and Ms. O'Dell's progress from Little Rock. Because Investigator Chastain had reasonable suspicion that the appellant was involved in the delivery of methamphetamine, we affirm the circuit court's denial of appellant's motion to suppress the evidence seized pursuant to his stop of the car and subsequent resulting discovery of drugs and paraphernalia found therein.

Affirmed in part; reversed and remanded in part.

HART and WYNNE, JJ., agree.