# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–676

| | |
|---|---|
| JONATHAN SCOTT CASEY<br>APPELLANT | **Opinion Delivered** February 17, 2016 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CR-14-1935] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE ROBIN F. GREEN, JUDGE |
| | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Jonathan Scott Casey appeals his conviction of Driving While Intoxicated ("DWI") from the Benton County Circuit Court. On appeal, Casey argues that the circuit court erred in denying his motion to suppress. We affirm.

On April 12, 2014, Officer B.J. Wilson with the Bella Vista Police Department performed a traffic stop on Casey. After Casey failed two field-sobriety tests and registered .15 on a portable breathalyzer test ("PBT"), Officer Wilson arrested Casey for DWI and transported him to the Benton County jail. Casey registered .13 on the breathalyzer at the jail.

Following his arrest, Casey filed a motion in the Benton County Circuit Court to suppress the evidence obtained during the traffic stop. He argued that Officer Wilson did not have reasonable suspicion to detain him. The circuit court held a hearing on the motion on February 23, 2015.

SLIP OPINION

At the hearing, the State played an audio recording of a 911 call made on April 12, 2014, from Shannon Hadley.  The transcript of the recording is as follows:

DISPATCHER:      And . . . what was his name again?

HADLEY:      His name is Scott. He's beating on my front door now.

DISPATCHER:      All right. There's just such bad feedback. Scott what?

HADLEY:      Scott. He's beating on my front door now.

DISPATCHER:      All right. Hang on just one second.

HADLEY:      Don't go out there. He'll kick my door in.

DISPATCHER:      (Inaudible.) I have three officers on the way right now. Give me . . . just one second, okay?

HADLEY:      Okay.

. . . .

DISPATCHER:      Do you know if he . . . has been drinking?

HADLEY:      Yes.

DISPATCHER:      He has been? And do you know if he has any weapons on him?

HADLEY:      Yeah. He's got a pistol.

DISPATCHER:      He's got a pistol on him? All right.

HADLEY:      He did earlier, yeah.

DISPATCHER:      Oh, he did earlier? Okay. Hang on just one second.

DISPATCHER:      What type of . . . weapon does he have?

HADLEY:      A .20 gauge.

DISPATCHER:      A .20 gauge. He had a pistol?

HADLEY:         Yes.

DISPATCHER:     (Inaudible.) What is . . . you have a . . . is it your wife or girlfriend with you?

HADLEY:         Just a friend.

DISPATCHER:     Just a friend? Is that a . . . it's a lady friend?

HADLEY:         Yes, ma'am.

DISPATCHER:     Okay.

HADLEY:         (Inaudible.)

DISPATCHER:     He's not inside the residence. He's outside, correct?

HADLEY:         Yeah.

HADLEY:         He just got in his truck. Pulling . . .  off now.

DISPATCHER:     All right.

HADLEY:         In a four-door Chevy pickup.

DISPATCHER:     All right.

(inaudible)

DISPATCHER:     Is he still pulling off?

HADLEY:         Yeah. He . . . just did.

DISPATCHER:     And you said in a . . . tan Chevy, right?

HADLEY:         Yeah (inaudible).

DISPATCHER:     Okay. That's what I told them.

. . . .

At this point in the proceedings, the State requested to replay the first minute of the recording in hopes of clarifying inaudible portions.

HADLEY: Yes, ma'am. I'm at nine Finger Circle.

DISPATCHER: Yes, sir.

HADLEY: I want this guy off my property. He's at my house.

DISPATCHER: All right. You have someone on your property at nine Finger Circle and you want him off there?

HADLEY: Yes, ma'am.

DISPATCHER: All right. Do you know who he is?

HADLEY: Yes. He's an ex-boyfriend of the person that's here.

DISPATCHER: Okay. Is that . . .

HADLEY: Shannon.

DISPATCHER: Shannon? All right. Shannon.

HADLEY: Hadley.

DISPATCHER: Can you spell your last name for me, Shannon?

HADLEY: H-A-D-L-E-Y.

DISPATCHER: Okay. And what was his name again?

HADLEY: His name is Scott. He's beating on my front door now.

DISPATCHER: All right. There's just such bad feedback. Scott what?

HADLEY: Scott. He's beating on my front door right now.

DISPATCHER: All right. Hang on one second.

HADLEY: Don't go out there. He'll kick my door in.

4

Following the replay of the recording, Hadley testified that he called 911 on April 12, 2014, because Scott Casey was banging on his door at 2:00 a.m. He stated that at that time, Casey's ex-wife, Ashley,[1] was at his house. Hadley explained that he and Ashley had seen Casey at a bar earlier that night and that he and Casey had gotten into a physical altercation. He testified that someone at the bar called the police and that the police told him that they were going to arrest Casey. He also testified that someone at the bar told him that Casey had a pistol.

Jennifer Weber, the dispatcher on the 911 recording, testified that after she received the call from Hadley, she communicated to officers what Hadley had told her. She testified that she told officers that Casey had been drinking and that he may have had a pistol.

Officer Wilson testified that, on April 12, 2014, he received a complaint from a dispatcher that a male in a tan truck at nine Finger Circle had been drinking and had a gun. He explained that the dispatcher also transmitted a code indicating that the male was "intoxicated." Officer Wilson testified that he went to the residence along with Corporal Whitehead and that they observed a tan truck less than one hundred yards away from nine Finger Circle. He explained that he turned on his lights and made contact with Casey while he was in the truck. He testified that, as he approached Casey, Casey placed a mint in his mouth. He then asked Casey to exit the vehicle, and Casey complied. He testified that he asked Casey whether he had any weapons and that Casey responded that he did not; however, after he conducted a pat down of Casey, he discovered a knife. He stated that Officer

---

[1] It is unclear from the record whether Ashley is Casey's ex-girlfriend or ex-wife.

Whitehead saw an alcohol bottle in the floorboard of Casey's truck and that Casey admitted that he had been drinking. Officer Wilson testified that he performed three field-sobriety tests on Casey and that Casey failed two of them. He also testified that he administered a PBT on Casey. Officer Wilson then arrested Casey for DWI. He transported Casey to the Bella Vista Police Department and conducted a blood-alcohol-content ("BAC") test. The State introduced into evidence the results of Casey's BAC test, which showed that Casey registered .13.

During his cross-examination of Howard, Casey's counsel introduced into evidence a form that Officer Wilson completed after he had arrested Casey. On the form, Officer Wilson indicated that Casey registered .15 on the PBT and that he initiated contact with Casey for "trespassing." Officer Wilson explained that he wrote trespassing on the form because he was "new." He stated that he should have put "investigative stop for reason of suspicion."

Following the testimony, the court denied Casey's motion to suppress. The court later convicted Casey of DWI and sentenced him to one day in the Benton County jail. The court also fined Casey $500 and ordered him to pay $300 in court costs and a $20 booking fee. Casey appealed his conviction to this court. On appeal, Casey argues that the circuit court erred in denying his motion to suppress the State's evidence in violation of Arkansas Rule of Criminal Procedure 3.1.

On review of a circuit court's denial of a motion to suppress evidence, this court reviews the circuit court's factual determinations for clear error, while reviewing its legal

conclusions de novo. *James v. State*, 2012 Ark. App. 118, 390 S.W.3d 95. Consistent with this standard, this court defers to the superior position of the circuit court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination based on the totality of the circumstances. *Id.*

Pursuant to Arkansas Rule of Criminal Procedure 3.1, a police officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or damage to property. Under this rule, the key word is "suspects," and reasonable suspicion does not require that an officer "rule out the possibility of innocent conduct." *James*, 2012 Ark. App. 118, at 8, 390 S.W.3d at 100 (quoting *United States v. Arvizu*, 534 U.S. 266 (2002)). "Reasonable suspicion" is defined as a suspicion based on facts or circumstances, which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion. Ark. R. Crim. P. 2.1. The determination of whether an officer has reasonable suspicion under the totality of the circumstances includes whether an officer has specific, particularized, and articulable reasons to indicate that the person may be involved in criminal activity. *James*, 2012 Ark. App. 118, 390 S.W.3d 95. Furthermore, the facts articulated must be considered together as a whole and not in isolation. *Id.*

In this case, Casey argues that the circuit court should have suppressed the evidence obtained through Officer Wilson's traffic stop because Officer Wilson did not have reasonable

Cite as 2016 Ark. App. 98

suspicion to detain him. In making his argument, Casey asserts that the facts of this case are similar to the facts in *Van Patten v. State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985).

In *Van Patten*, this court held that an officer did not have reasonable suspicion to detain the defendant after an anonymous person called 911 and reported that an individual in a brown Jeep had created a disturbance at a party. *Id.* This court reasoned that the officer did not have particular or articulable reasons to suspect that a felony or a misdemeanor involving danger of injury to persons or property had been committed because the radio dispatch was anonymous and provided "extremely general information about a 'loud party' and a 'brown Jeep.'" *Id.*

We hold that the facts in this case are unlike the facts in *Van Patten* and that Officer Wilson had reasonable suspicion to detain Casey. This was not an anonymous tip. Hadley identified himself and provided his telephone number and address. He further provided specific information about the incident: that Casey had been beating on his door; that Casey had been drinking and had a gun; and that Casey had left the residence in a tan Chevrolet truck. Thus, Officer Wilson had specific, particularized, and articulable reasons to indicate that Casey might have been involved in criminal activity.

Casey additionally asserts that because the dispatcher transmitted the "intoxication" code when Hadley stated only that Casey had been "drinking," Officer Wilson relied on false information when he made the stop. Casey's argument is unpersuasive. The distinction between "intoxication" and "drinking" does not amount to false information. Accordingly,



we hold that Officer Wilson lawfully detained Casey, and the circuit court properly denied his motion to suppress.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Norwood & Norwood, P.A.*, by: *Doug Norwood* and *Alison Lee*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.